IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KIMBERLY LAFAVE,            )
GLENN M. TAUBMAN, and       )
ROBERT HOLZHAUER,           )
                            )
    Plaintiffs,             )
                            )
    v.                      )    Case No:    1:23-cv-1605
                            )
THE COUNTY OF FAIRFAX, VIRGINIA, and )
KEVIN DAVIS, in his official )
capacity as Chief of Police, )
                            )
    Defendants.             )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

    Plaintiffs, Kimberly LaFave, Glenn M. Taubman, and Robert Holzhauer, move for a

preliminary injunction against Defendants, the County of Fairfax, Virginia, and its Chief of

Police, Kevin Davis:

**Introduction**

    This is an action to vindicate the right of residents and visitors in the County of Fairfax,

Virginia, to keep and bear arms under the Second Amendment to the United States Constitution,

which guarantees that "the right of the people to keep and bear arms, shall not be infringed."

Plaintiffs also seek relief under the Constitution's Fourteenth Amendment from vaguely-worded

crimes, which Amendment guarantees that no State shall "deprive any person of life, liberty, or

property, without due process of law…."

    On September 16, 2020, the Fairfax County Board of Supervisors enacted an ordinance

banning any member of the public from bearing firearms in County parks, or at permitted events,

or adjacent to such events or events that otherwise should be permitted (the "Ban"). This legislation brazenly violates the Second Amendment.

      The United States Supreme Court held just last year in *New York State Rifle & Pistol Association, Inc. v. Bruen* that "The Second Amendment's plain text [ ] presumptively guarantees … a right to 'bear' arms in public for self-defense." 142 S. Ct. 2111, 2135.  The burden falls on the government to show that a restriction "is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2135.  While firearms may be banned in "sensitive places" like schools and courthouses, sensitive places do not include "all places of public congregation that are not isolated from law enforcement…." *Id*. at 2134.

      Fairfax County bans firearms in its public parks, which consist of 23,632 acres with over 334 miles of trails.  The parks include vast amounts of wooded acreage, much of it isolated. Before the Ban's passage, Plaintiffs regularly carried concealed handguns in the parks for self-protection, as lawfully authorized by their Virginia permits.  By enacting an ordinance making it a crime to do so, the County deprives Plaintiffs of their Second Amendment rights to carry firearms for self-defense.

      The County also bans firearms on public streets and sidewalks that are adjacent to a permitted event or an event that would otherwise require a permit.  In addition to violating the Second Amendment, this provision is vague and fails to give notice of what is prohibited, in violation of the Fourteenth Amendment's due process clause.

      Plaintiffs seek a preliminary injunction ordering the County to refrain from enforcing the above provisions during the pendency of this litigation.

**The Preliminary Injunction Standard**

"A party seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Roe v. Dep't of Defense*, 947 F.3d 207, 219 (4th Cir. 2020) (cleaned up).  The last two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**The Ban Prohibits Bearing Arms In Public Places**

Virginia law allows individuals to carry firearms in public openly, i.e., not hidden from common observation.  Va. Code § 18.2-308(A).  A person may also carry a concealed handgun in public if she has a permit issued under Va. Code § 18.2-308.01.  The public places where a firearm may not be possessed are narrowly defined, including in a courthouse (§ 18.2–283.1); on school property (§ 18.2-308.1);[1] an air carrier airport terminal (§ 18.2-287.01); the Capitol, Capitol Square, the surrounding area, and Commonwealth buildings and offices where its employees work (§ 18.2-283.2(B)), but excluding "any state park" (§ 18.2-283.2(E)(v)), meaning that the public may bear arms in state parkland.

Virginia law generally prohibits localities from adopting ordinances governing the possession of firearms, except as expressly authorized.  *See* Va. Code § 15.2-915(A).  However, in 2020, the General Assembly amended that provision by allowing localities to adopt ordinances prohibiting possession of firearms in public parks, and on public streets and sidewalks being used by or is adjacent to a permitted event, or an event that would otherwise require a permit.  Va. Code § 15.2-915(E).  The statute also required notice of such ordinances to be posted at the entrances to such places.  Va. Code § 15.2-915(F).

---

[1] With an exemption for permittee ingress or egress in a motor vehicle. *See* Va. Code § 18.2-308.1(E)(vii).

On September 16, 2020, the Fairfax County Board of Supervisors amended Article 2 and § 6-2-1 of the Fairfax County Code. Subsection A of that section states in pertinent part:

> The possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof is prohibited in the following areas: . . .
>
> 2.  In any public park owned or operated by the County, or by any authority or local government entity created or controlled by the County. . . .
>
> 4.  In any public street, road, alley, or sidewalk or public right-of-way or any other place of whatever nature that is open to the public and is being used by or is adjacent to a permitted event or an event that would otherwise require a permit.

The Board of Supervisors also added § 6-2-1(D)(1) to the Code, which states in pertinent part:

> Notice of this ordinance shall be posted . . . (ii) at all entrances of any public park owned or operated by the County, or by any authority or local governmental entity created or controlled by the County; . . . and (iv) at all entrances or other appropriate places of ingress and egress to any public street, road, alley, or sidewalk . . . or public right-of-way or any other place of whatever nature that is open . . . to the public and is being used by or is adjacent to a permitted event or an event that would otherwise require a permit.

Although the that notice requirement mandates posting of notice of the Ordinance, the existence of posting is not an element of the crime of possession of a firearm set forth in § 6-2-1(A).  Hence, individuals may be charged and convicted of possessing firearms in public places even without being put on notice that they are prohibited from bearing arms in those places.

The Board of Supervisors also added § 6-2-1(E) to the Code as follows: "Violations of Section 6-2-1(A) shall constitute a Class 1 misdemeanor."  A Class 1 misdemeanor is punishable by confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both.  Fairfax County Code § 1-1-12; Va. Code § 18.2-11(a).

The Ordinance's provisions became effective upon adoption.

**Facts**

Fairfax County owns, operates, and/or controls public parkland consisting of 23,632 acres, 420 parks, and more than 334 miles of trails.  This equates to over 9.3 percent of the Fairfax County's land mass.  Seventy-nine percent of Fairfax County's households are park users.[2]  The parks include vast amounts of wooded acreage, much of it remote and isolated.

In 2022 in Fairfax County, the following crimes were reported to law enforcement: 22 homicides; 162 kidnappings/abductions; 374 sex offenses, and 8,918 assaults victims.  *Fairfax County Police Department Statistical Report Calendar Years 2021 & 2022*, at 6-9 (May 2023).[3]

For many potential victims of crime, including Plaintiffs, having access to a firearm may be the only way to defend themselves and prevent being victimized.  Police cannot be expected to be present when a person is suddenly attacked.

Criminals who commit murder, robbery, rape, and other violent crimes punishable as major felonies are not dissuaded by signs prohibiting possession of firearms.  To the contrary, banning firearms in parks leaves law-abiding citizens defenseless, and makes it easier for criminals to attack their victims without fear of resistance.

Plaintiff Kimberly LaFave is a paralegal who also has a dog-walking business.  She is an NRA-certified Firearms Instructor, and a leader of the Loudoun County Chapter and the Bull Run (Fairfax County) Chapter of a non-profit women's shooting organization, with 294 chapters and 11,610 members nationwide.  This organization teaches women gun safety, the responsible

---

[2] https://www.fairfaxcounty.gov/budget/sites/budget/files/assets/documents/fy2023/advertised/volume1/51.pdf

[3] https://www.fairfaxcounty.gov/police/sites/police/files/assets/images/helpfulinfo/fcpd%20annual%20statistical%20report%20(2021%20&%202022).pdf

use of firearms for self-defense, techniques for carrying concealed handguns, and hands-on shooting skills. Compl. ¶ 28.

Ms. LaFave has used Fairfax County park trails for several years and continues to do so for recreation, dog walking, and other activities.  Many of the trails are in remote areas with few people and no police presence.  She is aware that serious crimes have been committed against women on the Fairfax County park trails and regularly carried a concealed handgun, for which she has a permit, for self-defense.  *Id.* ¶ 29.

The Ban imposed a dilemma upon Ms. LaFave: If she continued to carry a concealed handgun in Fairfax County parks, she faces the threat of arrest and related injuries, but if she foregoes doing so, she will lose her means of security and will be vulnerable to criminal attack. But for the Ordinance, she would continue lawfully to carry a concealed handgun in Fairfax County parks.  *Id.* ¶ 30.

Plaintiff Glenn M. Taubman is an attorney who is a member of the bars of New York, Georgia, and the District of Columbia.  He previously clerked for several federal judges, and has had a Virginia concealed carry permit for nearly fifteen years.  He is an avid cyclist who regularly uses Fairfax County parks and trails.  *Id.* ¶ 31.

Mr. Taubman testified against the Ordinance that is the subject of this lawsuit at the County Board of Supervisors public hearing on September 15, 2020, in which he explained that he carried a concealed handgun in the parks and added: "Your ordinance will leave us citizens defenseless in the face of gangs and criminals (who I have personally seen in county parks and bike trails)."  *Id.* ¶ 32. Before the Ordinance's enactment, Mr. Taubman possessed, carried, and transported firearms, on his person, in his vehicle, on the public streets, roads, alleys, sidewalks, public rights-of-way, and other places that are open to the public in Fairfax County.  He

continues doing so even though he is often unaware whether or not such places are being used by, or are adjacent to, a permitted event or an event that would otherwise require a permit. When he becomes aware of such event, he must either not carry or possess a firearm or must endeavor to avoid such locations.   *Id.* ¶ 33.

Plaintiff Robert Holzhauer was a commissioned police officer for eleven years, and a member of the U.S. Army for 27 years, retiring as a Lieutenant Colonel with an honorable discharge and a 100% permanent, total disability.  Since becoming a County resident in 2004, he used Fairfax County parks for 3-4 days a week, and sometimes on a daily basis, minus deployment periods in Iraq, Yemen, Libya, and Liberia. *Id.* ¶ 34.

Lt. Col. Holzhauer has a concealed carry permit.  When hiking in remote areas of the Fairfax County parks, he carried a handgun for protection from potential criminals and wild animals like bears.  His disability creates a particular need to carry a handgun for self-defense, as he cannot otherwise defend himself.  *Id.* ¶ 35.  When informed of the Ordinance, Lt. Col. Holzhauer discontinued carrying a handgun in the parks for fear of prosecution.  But for the Ordinance, he would continue carrying a concealed handgun in the parks.  *Id.* ¶ 36.

As noted, § 6-2-1(A)(4) of the Ordinance also prohibits the possession, carrying, or transportation of any firearms "[i]n any public street, road, alley, or sidewalk or public right-of-way or any other place of whatever nature that is open to the public and is being used by or is adjacent to a permitted event or an event that would otherwise require a permit."

Before the Ordinance's enactment, Plaintiffs Taubman, LaFave, and Holzhauer possessed, carried, and transported firearms, on their persons or in vehicles, on the public streets, roads, alleys, sidewalks, public rights-of-way, and other places that are open to the public in Fairfax County.  They continue doing so while being unaware that such places are being used by

or are adjacent to a permitted event or an event that would otherwise require a permit.  When they are aware of such events, they must either not carry or possess a firearm, or must endeavor to avoid such locations.  Compl. ¶ 39.

If Plaintiffs possess, carry, or transport firearms at the places specified in § 6-2-1(A)(4), regardless of whether they are aware of the event or that they are at a place adjacent to such event, they are subject to arrest and prosecution. Compl. ¶ 40.

Accordingly, as a result of the Ordinance's enactment by Fairfax County and its enforcement by Chief of Police Kevin Davis, Plaintiffs are threatened with irreparable harm and have no adequate remedy at law.  *Id.* ¶ 41.

# I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

## A.  The Park Ban Violates the Second Amendment

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at, 2126.

### 1.  The Ban Does Not Pass *Bruen*'s Text-History Test.

The Second Amendment guarantees that "the right of the people to keep and bear arms, shall not be infringed."  Section 6-2-1(A)(2) of the Ordinance states: "The possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof is prohibited in … any public park …." As applied to the entire 23,632 acres of Fairfax County public parks, the Ban infringes on the right to bear arms.

"[T]he plain text of the Second Amendment protects … carrying handguns publicly for self-defense." *Bruen*, 142 S. Ct. at 2134; *see also Teter v. Lopez*, 76 F.4th 938, 948 (9th Cir. 2023) (the first prong of the analysis is purely textual). It "presumptively guarantees … a right to 'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135.

Given that presumption, the burden falls on the County to show that a restriction "is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2135; *see also Range v. Attorney General,* 69 F.4th 96, 105 (3d Cir. 2023) (en banc) (*Bruen* held that "historical restrictions on firearms in 'sensitive places' do not empower legislatures to designate any place 'sensitive' and then ban firearms there."). The County must meet its burden through analogical reasoning, which "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin.*" *Bruen*, 142 S. Ct.. at 2133 (emphasis in original). Because the parks ban addresses a general historical problem that existed since the founding (firearms violence in public—the same problem at issue in *Heller* and *Bruen*, *Bruen*, 142 S. Ct. at 2131) the historical analogue must be "distinctly similar" to the modern regulation. *Id.* at 2131. The analogue's similarity is measured by "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133. Courts may not apply intermediate scrutiny or "means-end scrutiny in the Second Amendment context." *Id*. at 2127.

But "not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.'" *Id*. at 2136, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634–635 (2008) (emphasis added). The Second Amendment was adopted in 1791, and "to the extent later history contradicts what the text says, the text controls. … Thus, post-ratification adoption or acceptance of laws that are *inconsistent* with the

original meaning of the constitutional text obviously cannot overcome or alter that text.'"  *Id*. at 2137 (citation omitted); *see also Bruen*, 142 S. Ct. at 2154 (reliance on territorial laws from 1868-1890 had "several serious flaws even beyond their temporal distance from the founding.").

*Bruen* does recognize limited places and circumstances where firearms may be prohibited, referencing longstanding "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. at 2133 (quoting *Heller*, 554 U.S. at 626).  *Bruen* also observed a handful of other 'sensitive places' from the 18th and 19th centuries where weapons were altogether prohibited, noting legislative assemblies, polling places, and courthouses.  *Bruen*, 142 S. Ct. at 2133 (citing D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13 CHARLESTON L. REV. 205, 229–236, 244–247 (2018)).

All of the places *Bruen* listed as "sensitive" are buildings, except that "schools" include both school buildings and school yards, including playgrounds and athletic fields.  Further, as the *Sensitive Places* article endorsed in *Bruen* points out, the provision of enhanced security demarks a location as sensitive:

> The government's behavior can demonstrate the true importance of the alleged government interest. Passing a statute declaring some place to be a "gun free zone" does nothing to deter criminals from entering with guns and attacking the people inside. In contrast, when a building, such as a courthouse, is protected by metal detectors and guards, the government shows the seriousness of the government's belief that the building is sensitive.

Kopel & Greenlee, 13 CHARLESTON L. REV. at 290.

By contrast, Fairfax County's ban is not limited to buildings, playgrounds, or athletic fields. Instead, it bans the exercise of the right to bear arms for self-defense throughout the 23,632 acres of primarily wooded areas with the least population density in the County, as well as public byways that may encounter gatherings that should be permitted.  But "*Public parks are not sensitive places*. They are not buildings. There is no practical means of preventing armed criminals from entering.

They are similar to the vast majority of land in the United States, which is outdoors, not indoors." *Id.* at 291 (emphasis in original).

Simply being a place where people congregate does not suffice.  "Expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly."  *Bruen*, 142 S. Ct. at 2133-34.  That test "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense …."  *Id.* at 2134.

*Bruen* further held that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department."  *Id.*  The island of Manhattan, one of the most densely-populated cities in the world, consists of 14,502.4 acres of land.[4]  Fairfax County public parks, which are not densely populated, consist of 23,632 acres of land.  And if firearms may not be banned in every public space in a city (which makes Fairfax's ban on firearms on public byways patently unconstitutional), they plainly may not be banned in vast, mostly wooded lands.

### 2.  Post-*Bruen* Courts Have Found Park Bans Unconstitutional.

Three post-*Bruen* federal district courts have found that plaintiffs are likely to prevail on their claim that public parks are not "sensitive places," and preliminarily enjoined the enforcement of laws banning firearms therein.  The decisions extensively detail that valid historical analogues do not exist to uphold the bans.

*Antonyuk v. Hochul*, found that plaintiffs are likely to prevail on their claim that public parks are not "sensitive places" and preliminarily enjoined New York state's ban on firearms in

---

[4] U.S. Census Bureau, Quick Facts, New York County [Manhattan], New York, showing land area as 22.66 sq. miles (14,502.4 acres).
https://www.census.gov/quickfacts/fact/table/newyorkcountynewyork/PST045221.

public parks.  639 F.Supp.3d 232, 322-23 (N.D.N.Y. Nov. 7, 2022). That court held that the

Second Amendment's "plain text" covers "carrying a concealed handgun for self-defense" in

public parks.  *Id*.

In *Antonyuk*, New York was required to "rebut the presumption of [the Second

Amendment's] protection against this regulation by demonstrating that it is consistent with this

Nation's historical tradition of firearm regulation."  *Id*. at *323.  In a detailed analysis of state

and local laws from the second half of the nineteenth century, the court held that the state did not

sustain its burden. *Id*. at *323-24.  The laws were too few in number and too removed in time

from the Second Amendment's adoption, and "the burdensomeness of this regulation to be

unreasonably disproportionate to that of its historical analogues."  *Id*. at *324.[5]

The court in *Koons v. Platkin* preliminarily enjoined enforcement of New Jersey's ban on

firearms in public parks.  2023 WL 3478604 at *85 (D.N.J. May 16, 2023), appeal filed (3rd Cir.

June 9, 2023).  In a lengthy analysis, *id*. at *82-85, the court found that "laws arising in the mid-

to late-19th century do not establish a historical tradition of banning firearms at parks especially

since the modern equivalent of parks existed during this nation's founding."  *Id*. at *85.[6]  That is

what *Bruen* referred to as a "fairly straightforward": "[W]hen a challenged regulation addresses a

general societal problem that has persisted since the 18th century, the lack of a distinctly similar

---

[5] The *Antonyuk* preliminary injunctions were stayed by the Second Circuit.  *Antonyuk v. Hochul*, Nos. 22-2908(L), 22-2972(Con), 2022 WL 18228317 (Dec. 7, 2022).  The Supreme Court denied plaintiffs' motion to vacate the stay, but Justice Alito issued a statement noting that the district court had issued "a thorough opinion," that the Second Circuit provided no explanation for issuance of its stay, and that the applicants could seek relief again if the Second Circuit did not explain its stay order or expedite the appeal.  *Antonyuk v. Nigrelli*, 143 S. Ct. 481 (2023). The Second Circuit has since heard oral argument, but not yet rendered a decision.

[6] A preliminary injunction was also issued regarding the same New Jersey law in *Siegel v. Platkin*, 2023 WL 1103676 at *12 (D.N.J., Jan. 30, 2023) ("Plaintiffs have met their burden at this stage of showing a likelihood of success that the restrictions of Subpart 10 are unconstitutional as to public parks").

historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131.

Similarly, *Wolford v. Lopez*, found that plaintiffs were likely to succeed on the merits, and issued a temporary restraining order against enforcement of Hawaii's ban on firearms in public parks. 2023 WL 5043805 at *24 (D. Haw. Aug. 8, 2023). The *Wolford* court held that the carrying of firearms in parks "is covered by the plain text of the Second Amendment," and the "burden shifts to the State to offer evidence" that the ban "is consistent with this Nation's historical tradition of gun regulation." *Id*. at *19. The court analyzed the historical record in detail, finding that no such historical tradition existed. *Id*. at *19-24.[7]

### 3. Pre-*Bruen* Courts Found Park Bans Unconstitutional Under *Heller*'s Standard.

Following the Supreme Court's 2008 decision in *Heller*, and using the mode of analysis later adopted in *Bruen,* several state and federal courts found that park gun bans violate the right to bear arms.

While decided under the state of Delaware's own constitutional guarantee, *Bridgeville Rifle & Pistol Club v. Small*, likewise concurred with *Heller,* holding that "the core right to bear arms for self-defense is a traditional or pre-existing right—i.e., a right that existed even before being codified." 176 A.3d 632, 650 (Del. 2017). The *Bridgeville* court held a ban on firearms in public parks with acreage almost identical to that of Fairfax County to be unconstitutional, observing:

---

[7] *Wolford* refuted in detail a contrary district court in Maryland decision holding that plaintiffs were not likely to succeed on the merits of their challenge to a park ban. *Id*. at *22-24, analyzing *Maryland Shall Issue, Inc. v. Montgomery Cnty.*, 2023 WL 4373260 (D. Md. July 6, 2023), appeal filed (4th Cir. July 10, 2023).

> Nor is [the parks gun ban] limited to what might legitimately be characterized as a "sensitive" place supported by evidence buttressing the designation of certain areas as such places. Rather, this ban applies to *all* 23,000 acres of Parks and 18,000 acres of Forests – spanning an area almost the size of the entire District of Columbia at issue in *Heller* and four times the size of the City of Wilmington – and to every segment of the population.

*Id*. at 654.

Similarly, in *DiGiacinto v. Rector & Visitors of George Mason University*, the Virginia Supreme Court found the Virginia Constitution's arms guarantee "co-extensive with the rights provided by the Second Amendment" as explained in *Heller*. 281 Va. 127, 133 (2011). "*Unlike a public street or park*, a university traditionally has not been open to the general public," and the restriction at issue "is tailored, *restricting weapons only in those places where people congregate and are most vulnerable* – inside campus buildings and at campus events. *Individuals may still carry or possess weapons on the open grounds ….*" *Id*. at 136 (emphasis added).

In *Solomon v. Cook County Board of Commissioners*, the court held a ban on carrying firearms by gun permit holders on the 70,000 acres of the Forest Preserve District of Cook County ("FPDCC) to be constitutionally overbroad. 559 F.Supp.3d 675, 679 (N.D. Ill. 2021). The government defendants could not show that the 70,000 acres, which was more than 11% of the land in the county, was a "sensitive place." *Id*. at 693. In rejecting the government's purported safety rational for the ban, the *Solomon* court further noted, "the government has shown little threat to public safety in the FPDCC, and even less involving concealed firearms, and none by CCL [concealed carry license] holders." *Id*. at 702-03.

Similarly, in *Morris v. U.S. Army Corps of Engineers*, the court, invalidated a gun ban in recreation areas administered by the Army Corps of Engineers as violating of the right to bear arms. 60 F.Supp.3d 1120, 1123 (D. Idaho 2014). Unlike the 'sensitive place' analysis for

facilities like 'schools and government buildings,'" "the ban imposed by the Corps applies to outdoor parks, rendering the ban unconstitutional. *Id*. at 1124.

The entire 23,632 acres of Fairfax County public parks do not constitute a "sensitive place" where firearms may be banned.[8]  That is particularly true given that open carry of firearms and concealed carry of firearms with a permit are permitted in Virginia's crowded urban areas under the Commonwealth's regulatory scheme, which allowance the Second Amendment requires, as *Bruen* noted with respect to bearing arms in Manhattan.

**B. The Ban on Possession of a Firearm at an Event That Would Otherwise Require a Permit or Adjacent Area Thereto Violates the Second Amendment.**

The Ordinance bans firearms at "an event that would otherwise require a permit" or adjacent area thereto.  § 6-2-1(A)(4).  The Second Amendment "presumptively guarantees … a right to 'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135.  The County cannot show that its restriction "is consistent with this Nation's historical tradition of firearm regulation."  *Id*. at 2135.

No way exists for an individual to know that an activity requires a permit but has none, which presumably only the County could determine after the fact.  The ban chills Plaintiffs' exercise of the right to bear arms and leaves them vulnerable to arrest for inadvertent violations.

As with the public park gun ban, *Antonyuk* also found a New York state ban on firearms at certain public gatherings to violate the Second Amendment.  639 F.Supp.3d at *335-36, 339. The Second Amendment's plain text covers the bearing of arms at public gatherings, and New York's ban was not supported by historical tradition.  *Id*. at *75.   The court observed, "Under

---

[8] *See also, e.g., United States v. Masciandaro*, 638 F.3d 458, 473 (4th Cir. 2011) ("even if Daingerfield Island is not a sensitive place, ... 36 C.F.R. § 2.4(b) still passes constitutional muster under the intermediate scrutiny standard."), abrogated by *Bruen*, 142 S. Ct. at 2129 ("Not only did *Heller* decline to engage in means-end scrutiny generally, but it also specifically ruled out the intermediate-scrutiny test that respondents and the United States now urge us to adopt.").

this vague regulation, a law-abiding responsible license holder ... might suddenly find himself

with his grandkids in the middle of a protest that has come to his location, and from which he

would have to instantly flee lest the protesters render him a felon, which would appear to be a

novel rule in America." *Id*. at *339.  So too here, Plaintiffs could find themselves at what turns

out to be an event requiring a permit or on a street adjacent thereto.

Considering the very kind of "adjacency" gun prohibition like that Fairfax enacted here,

the Illinois Supreme Court held that a ban on possession of a firearm within 1000 feet of a public

park violates the right to bear arms, and explained further:

> Aside from the sheer number of locations and public areas that would qualify
> under the law, . . . the most troubling aspect is the lack of any notification where
> the 1000–foot restriction zone starts and where it would end. Innocent behavior
> could swiftly be transformed into culpable conduct if an individual unknowingly
> crosses into a firearm restriction zone. The result could create a chilling effect on
> the Second Amendment when an otherwise law-abiding individual may
> inadvertently violate the 1000–foot firearm-restricted zones by just turning a
> street corner.

*People v. Chairez*, 104 N.E.3d 1158, 1176 (Ill. 2018).  A similar threat faces Plaintiffs here, who

would have no notice of "an event that would otherwise require a permit" or an adjacent area

thereto.

### C.  The Ban on Possession of a Firearm at an Event That Would Otherwise Require a Permit or Adjacent Area is Vague and Violates Due Process

Section 6-2-1(A) prohibits firearm possession at "an event that would otherwise require a

permit" or an "adjacent" area. Individuals have no way to know whether an event requires a

permit, but has none.  Presumably, the County would not know either and, if the event is brought

to its attention, would have to determine whether it needs a permit after the fact.  It would thus

not be able to erect signs in advance.  These scenarios render § 6-2-1(A)(4) unconstitutionally

vague.

16

The Fourteenth Amendment declares: "No State … shall deprive any person of life, liberty, or property, without due process of law …."  "To survive a vagueness challenge, a statute must give a person of ordinary intelligence adequate notice of what conduct is prohibited and must include sufficient standards to prevent arbitrary and discriminatory enforcement." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (en banc).

While less clarity is required for civil statutes, "if criminal penalties may be imposed for violations of a law, a stricter standard is applied in reviewing the statute for vagueness." *Id*. at 272-73.  Further, "the question of a statute's vagueness is a purely legal issue that does not require additional fact-finding." *Id*. at 272.  That is the case here.

Plaintiffs have no way to know of the existence of an event that requires a permit but has none.  Nor would the County, which would thus not be able to post signage.  Such undefined standard allows arbitrary and discriminatory enforcement.  Police have no expertise in determining that something is "an event that would otherwise require a permit" or adjacent area thereto, and would be expected to enforce the ordinance without any guiding standards.

Finally, the provision has no scienter requirement, and "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*…." *United States v. Saunders*, 828 F.3d 198, 207 (4th Cir. 2016) (quoting *Colautti v. Franklin*, 439 U.S. 379, 395 & n.13 (1979) (abrogated on other grounds).  The provision is thus "a trap for those who act in good faith." *Colautti*, 439 U.S. at 395.

As such, § 6-2-1(A)(4) is unconstitutionally vague.

## II. THE BAN IMPOSES ONGOING IRREPARABLE HARM UPON PLAINTIFFS.

"The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'"

*Bruen*, 142 S. Ct. at 2156 (citation omitted).   Accordingly, just as "'[t]he loss of First Amendment freedoms, for even minimal periods of time, []unquestionably constitutes irreparable injury,'" so too it does for the freedoms protected by the Second Amendment.  See *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

 The three district courts that found post-*Bruen* challenges to park bans likely to prevail on the merits also found that the bans created irreparable harm.  *Antonyuk*, found that the plaintiffs suffered irreparable harm for the reasons it rendered in its prior decision, *Antonyuk*, 639 F.Supp.3d at 347 (citing 624 F.Supp.3d 210, 259-60 (N.D.N.Y. 2022)).  The irreparable harm included "constitutional violations" and "his diminished safety in all the locations that he currently carries his concealed handgun that he will not be able to carry it." *Id.* at *36.  *Koons* held that plaintiffs suffered irreparable harm because the law violated their constitutional rights and threatened them with prosecution2023 WL 3478604, at *104-05.  *Wolford* likewise found irreparable harms because the ban violated a constitutional right, and the plaintiffs were threatened with criminal penalties.  2023 WL 5043805 at *30-31.

 Plaintiffs suffer irreparable harm here for exactly the same reasons.

## III.  BOTH THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR PLAINTIFFS.

 A state "is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club*, 637 F.3d at 302-03.  Moreover, "upholding constitutional rights is in the public interest." *Id.* at 303.

 The three district courts that found post-*Bruen* challenges to park bans likely to prevail on the merits also held that the balance of the equities and the public interest were served by a preliminary injunction.  *Antonyuk* pointed to "the safety that a licensed concealed handgun

18

regularly provides, or would provide, to the many law-abiding responsible citizens in the state too powerless to physically defend themselves in public without a handgun," including, inter alia, "disabled people."  624 F.Supp.3d 210, 260.

Koons held that where a "challenged government action involves the exercise of constitutional rights, 'the public interest ... tip[s] sharply in favor of enjoining' the law." 2023 WL 3478604 at *105 (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).  It found that the injunction would not harm the state, which "has failed to offer any evidence that law-abiding responsible citizens who carry firearms in public for self-defense are responsible for an increase in gun violence."  *Id.* at *108.

*Wolford* held that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.*, quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Further, "the State has not established a factual basis for the public safety concerns regarding permit-carrying gun-owners who wish to exercise their Second Amendment right to carry a firearm in public."  *Wolford*, 2023 WL 5043805 at *32.

So too here, upholding constitutional rights is in the public interest, and Fairfax County will suffer no harm from citizens exercising their Second Amendment rights.

**CONCLUSION**

WHEREFORE, Plaintiffs pray that the Court:

1.  Find that the Plaintiffs are likely to prevail in their claim that the following two provisions of the Fairfax County Code infringe on the right of the people to keep and bear arms guaranteed by the Second Amendment to the United States Constitution, and are void:

(A)  Section 6-2-1(A)(2), which provides in pertinent part: "The possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof is prohibited

in … any public park owned or operated by the County, or by any authority or local government entity created or controlled by the County."

(B)  Section 6-2-1(A)(4), which provides in relevant part: "The possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof is prohibited in … any public street, road, alley, or sidewalk or public right-of-way or any other place of whatever nature that is open to the public and . . . is adjacent to a permitted event or an event that would otherwise require a permit."

2.  Find that the Plaintiffs are likely to prevail in their claim that the following portion of § 6-2-1(A)(4) of the Fairfax County Code is vague and violates the due process clause of the Fourteenth Amendment: "The possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof is prohibited in … any public street, road, alley, or sidewalk or public right-of-way or any other place of whatever nature that is open to the public and is being used by or is adjacent to . . . an event that would otherwise require a permit."

3.  Find that the aforesaid provisions of the Fairfax County Code cause irreparable harm to Plaintiffs and that the balance of the equities and the public interest favor Plaintiffs;

4.  Enter a preliminary injunction enjoining the County of Fairfax, Chief of Police Kevin Davis, and their agents, officers, and employees from enforcing the aforementioned provisions of § 6-2-1(A)(2) & (4) of the Fairfax County Code;

5.  Award Plaintiffs such other relief as is appropriate.

Respectfully Submitted,

Kimberly LaFave
Glenn M. Taubman
Robert Holzhauer,
          Plaintiffs

By Counsel

20

Stephen P. Halbrook
protell@aol.com
Va. Bar No. 18075
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
(703) 352-7276


Christopher M. Day
cmday@jurisday.com
Va. Bar No. 37470
Earl N. "Trey" Mayfield, III
tmayfield@jurisday.com
Va. Bar No. 41691
10521 Judicial Drive, Suite 200
Fairfax, VA 22030
(703) 268-5600

21