# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

KIMBERLY Y. LAFAVE, et al.     )
                           )
     *Plaintiffs*         )
                           )
v.                         )     Case No. 1:23-cv-01605-WBP
                           )
THE COUNTY OF FAIRFAX, VIRGINIA,     )
and KEVIN DAVIS, in his Official Capacity     )
as Chief of Police     )
                           )
     *Defendants*      )
_____)

 

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I.    Legal Standard ................................................................................................ 1

II.   Defendants' Statement of Undisputed Material Facts Should Be Deemed Admitted ........ 2

III.  The Ordinance Is Constitutional Under the Second Amendment ..................................... 3

  A.  The Parks Restriction is Constitutional Under *Bruen* ............................................. 4

    i.   Plaintiffs have not established that the Second Amendment's text protects carrying guns in County parks .......................................................................... 4

    ii.  The Parks Restriction is consistent with a long historical tradition of restricting firearms in parks and analogous places .................................................... 5

      1.  Plaintiffs' effort to dismiss 19th-century and later laws is baseless ............... 7

      2.  Plaintiffs' government-security argument is wrong ..................................... 8

      3.  *Antonyuk* correctly held that founding-era laws prohibited guns in crowded public forums ............................................................................. 9

      4.  Founding-era prohibitions on going armed to the terror of the people are analogous to the Parks Restriction ............................................... 9

      5.  Founding-era prohibitions in schools and in private landscapes without owner permission are analogous to the Parks Restriction ........................... 12

      6.  Undisputed evidence establishes that parks like the County's did not exist in the founding era ................................................................. 13

      7.  Historical laws reveal public understanding when passed either by appointed or by elected officials .................................................................. 16

      8.  Plaintiffs' claim that firearms were ubiquitous at the founding is irrelevant and unsupported ...................................................................... 18

  B.  The Events Restriction is Constitutional under *Bruen* ............................................. 19

IV.  The Ordinance Does Not Violate Due Process ................................................................. 20

  A.  Plaintiffs Lack Standing to Bring Their Vagueness Claim ......................................... 21

  B.  The Events Restriction Is Not Void for Vagueness .................................................. 21

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Agnew v. United States*,
   165 U.S. 36 (1897)..................................................................................................... 11

*Ams. for Prosperity Found. v. Bonta*,
   594 U.S. 595 (2021)..................................................................................................... 1

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) ........................................................................... 7, 9, 15, 19

*Boardley v. U.S. Dep't of Interior*,
   615 F.3d 508 (D.C. Cir. 2010) ................................................................................... 16

*Bryant v. Woodall*,
   1 F.4th 280 (4th Cir. 2021) ........................................................................................ 23

*District of Columbia v. Heller*,
   554 U.S. 570 (2008).............................................................................................. 16, 17

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022)................................................................................................ 15

*Doe v. Meron*,
   929 F.3d 153 (4th Cir. 2019) ..................................................................................... 14

*Elevate Group LLC v. Amyx, Inc.*,
   No. 1:21-cv-00048, 2022 WL 3924267 (E.D. Va. Aug. 30, 2022) ........................... 22

*Goldstein v. Hochul*,
   No. 1:22-cv-08300, 2023 WL 4236164 (S.D.N.Y. June 28, 2023), *appeal docketed*, No.
   23-995 (2d Cir. July 6, 2023)..................................................................................... 18

*Harvey v. Hobbs*,
   No. 1:20-cv-00605, 2023 WL 6445853 (E.D. Va. Sept. 29, 2023) ........................... 13

*Interprofession du Gruyère v. U.S. Dairy Exp. Council*,
   575 F. Supp. 3d 627 (E.D. Va. 2021), *aff'd*, 61 F.4th 407 (4th Cir. 2023) ........... 3, 14

*JDS Uniphase Corp. v. Jennings*,
   473 F. Supp. 2d 705 (E.D. Va. 2007) ..................................................................... 3, 13

*Kenny v. Wilson*,
   885 F.3d 280 (4th Cir. 2018) ..................................................................................... 20

*Kipke v. Moore*,
   Nos. 1:23-cv-01293 & 1:23-cv-01295 (consol.), 2023 WL 6381503 (D. Md. Sept. 29,
   2023)............................................................................................................................. 8

*Kolbe v. Hogan*,
   849 F.3d 114 (4th Cir. 2017) (en banc) ................................................................ 22, 23

*Koons v. Platkin*,
   673 F. Supp. 3d 515 (D.N.J. 2023), *appeal docketed*, No. 23-1900 (3d Cir. May 17, 2023).. 18

*LaFave v. Cnty. of Fairfax,*
No. CL2021-01569, 2023 Va. Cir. LEXIS 203 (Fairfax Cnty. Cir. Ct. June 23, 2023) ..... 15, 23

*Md. Shall Issue, Inc. v. Hogan,*
971 F.3d 199 (4th Cir. 2020) ................................................................................. 20, 21, 23

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022) .............................................................................................................. *passim*

*Perkins v. Int'l Paper Co.,*
936 F.3d 196 (4th Cir. 2019) ....................................................................................................... 9

*Robinson v. Florida,*
378 U.S. 153 (1964) .................................................................................................................. 16

*Santos v. Frederick Cnty. Bd. of Comm'rs,*
725 F.3d 451 (4th Cir. 2013) ................................................................................................... 10

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .................................................................................................................. 20

*United States v. Brown,*
552 F.2d 817 (8th Cir. 1977) ................................................................................................... 17

*United States v. Lofton,*
233 F.3d 313 (4th Cir. 2000) ................................................................................................... 17

*United States v. Nelson,*
277 F.3d 164 (2d Cir. 2002) .................................................................................................... 11

*United States v. Perez-Garcia,*
96 F.4th 1166 (9th Cir. 2024) ................................................................................................... 8

*United States v. Salerno,*
481 U.S. 739 (1987) .................................................................................................................. 22

*United States v. Silva,*
745 F.2d 840 (4th Cir. 1984) ................................................................................................... 11

*Va. Soc'y for Human Life, Inc. v. FEC,*
263 F.3d 379 (4th Cir. 2001) ................................................................................................... 23

**Statutes and Rules**

1868 Pa. Laws 1088, No. 1020, § 21, pt. II ..................................................................... 17

1905 Minn. Laws 620, ch. 344, § 53 ................................................................................ 17

1927 Ind. Acts 98 ...................................................................................................................... 17

Fairfax Cnty. Code § 6-2-1 ............................................................................................... *passim*

Fed. R. Evid. 803(18) ............................................................................................................ 14

Local Civ. R. 56(B) ......................................................................................................... 2, 3, 13

**Other Authorities**

Ann Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1 (2021) ........................................................ 15

*Annual Reports of the Department of the Interior for the Fiscal Year ended June 30, 1897* (1897) ................................................................................................................................. 17

Br. of J. Michael Luttig et al. as Amici Curiae in Support of Respondents, *New York State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2021 WL 4198019 (U.S. Sept. 13, 2021) .................... 11

Del. Const. of 1776, art. 28, *reprinted in Constitutions of the Several Independent States of America* (1786) ...................................................................................................................... 8

Va. Att'y Gen. Op. 01-080 (Dec. 6, 2001) ................................................................................ 17

*Virginia State Park Regulations* (1967) .................................................................................... 17

**INTRODUCTION**

In 2020, Fairfax County prohibited guns in County parks and at certain events on County property. These prohibitions are consistent with this nation's historical tradition of regulating firearms, including scores of prohibitions on guns in parks that have existed for as long as modern parks have existed, and so they are consistent with the Second Amendment under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

This case is about Plaintiffs' years-long effort to undo this modest, common-sense law. Contrary to Plaintiffs' suggestions, it is not about prohibiting guns throughout Fairfax County or about preventing young people from learning how to use firearms responsibly. The County's law simply defines some narrow sensitive places where it has determined that guns should not be carried. High school students can join a rifle club and Scouts can earn their rifle shooting merit badge—but they shoot at a range, not in their schools or in Burke Lake Park. The Constitution permits these modest regulations. We respectfully submit that this Court should grant summary judgment to Defendants and deny it to Plaintiffs.

**ARGUMENT**

**I.   Legal Standard**

Defendants set out the summary judgment standard in their moving brief. *See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs. Mem.") 12-13, Dkt. 45. Defendants also explained that Plaintiffs cannot prevail on the facial challenge they have brought unless they "establish that no set of circumstances exists under which the law would be valid, or show that the law lacks 'a plainly legitimate sweep." *Id.* at 13 (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (cleaned up). Plaintiffs' response brief adds nothing to the mischaracterization of the facial-challenge standard in their moving brief, so Defendants respectfully refer this Court to their prior briefs for their response. See *id.* at 13, 24-25 & n.16, 36; Defs.' Mem. in Opp. to Pls.' Mot.

for Summ. J. ("Defs. Opp.") 7-10, 32 n.38, 36, Dkt. 58; *see also infra* note 6. Defendants are entitled to summary judgment on Plaintiffs' facial challenge because the Ordinance has a plainly legitimate sweep.

## II. Defendants' Statement of Undisputed Material Facts Should Be Deemed Admitted

Plaintiffs' response brief did not address Defendants' statement of undisputed material facts. *See* Defs. Mem. 2-12, Dkt. 45; Pls.' Resp. to Defs.' Mot. for Summ. J. ("Pls. Opp."), Dkt. 60. Defendants' statement should therefore be deemed admitted.

Both parties included in their opening briefs the statement of undisputed material facts that this district's rules and the Rule 16(b) scheduling order require. *See* Local Civ. R. 56(B); Rule 16(b) Scheduling Order ("Scheduling Order") ¶ 10(f), Dkt. 37; Defs. Mem. 2-12; Mem. in Supp. of Pls. Mot. for Summ. J. ("Pls. Mem.") 3-8, Dkt. 53. Only Defendants, however, complied with the rule and order in their response brief:

> A brief in response to … a motion [for summary judgment] *shall include* a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.

Local Civ. R. 56(B) (emphasis added).

> A brief in opposition to a motion for summary judgment *must include* a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record.

Scheduling Order ¶ 10(f) (emphasis added); *see* Defs. Opp. 1-7; *cf.* Pls. Opp. *passim*.

Plaintiffs' failure means that Defendants' statement of undisputed facts should be treated as admitted. The local rule instructs that, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts *are admitted, unless such a fact is controverted* in the statement of genuine issues filed in opposition to the motion." Local Civ. R. 56(B) (emphasis added). Similarly, the Scheduling Order states that

"[t]he Court may assume that any fact identified by the movant as undisputed in the movant's brief that is *not specifically controverted* in the non-movant's brief *in the manner set forth above* is *admitted* for the purpose of deciding the motion for summary judgment." Scheduling Order ¶ 10(f) (emphasis added). Because Plaintiffs' response brief did not identify the specific facts they contend are disputed nor "cit[ed] … parts of the record" to support any claims of dispute, let alone in a "specifically captioned section," this Court should now assume that the entirety of Defendants' statement of undisputed facts is admitted. *See id.*; Local Civ. R. 56(B); Defs. Mem. 2-12; *Interprofession du Gruyère v. U.S. Dairy Exp. Council*, 575 F. Supp. 3d 627, 632 (E.D. Va. 2021) ("[Under] Local Rule 56(B) … [t]he nonmovant must … respond to each numbered paragraph [of the movant's statement], either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. The nonmovant's failure to respond to a fact listed by the movant constitutes an admission that the fact is undisputed."), *aff'd*, 61 F.4th 407 (4th Cir. 2023); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (deeming movant's statement of material facts undisputed where movant "submitted a properly captioned statement of undisputed facts with appropriate record citations" and nonmovant "responded with a narrative that did not identify with any specificity which facts, if any, were disputed").

## III. The Ordinance Is Constitutional Under the Second Amendment

Both the Parks Restriction and the Events Restriction are valid under the Second Amendment. *See* Defs. Mem. Part II; Defs. Opp. Part II. Nothing in Plaintiffs' response brief disturbs those conclusions. Large portions of that brief are substantively identical to their moving brief. *Compare, e.g.*, Pls. Mem. 16-17, *with* Pls. Opp. 7-8. Indeed, Plaintiffs' entire response brief appears to be a lightly-edited reissue of the reply brief they filed in January in support of their motion for a preliminary injunction—the motion Judge Hilton concluded was so clearly without

merit that he denied it from the bench. *Compare* Pls. Opp., *with* Reply in Supp. of Pls. Mot. for Prelim. Inj., Dkt. 26-1; *see* Dkts. 33, 38.

To avoid duplication, this reply brief will focus on the arguments in Plaintiffs' response brief to which Defendants have not previously responded in writing. Part II.A explains how *Bruen*'s principles apply to historical laws and undisputed evidence Defendants have presented and shows that the Parks Restriction is constitutional. Part II.B does the same for the Events Restriction.

## A. The Parks Restriction is Constitutional Under *Bruen*

*Bruen* requires Plaintiffs to establish that the conduct in which they seek to engage is protected by the Second Amendment's text before the burden shifts to Defendants to show that their regulation is consistent with this nation's historical tradition of firearm regulation. *See Bruen*, 597 U.S. at 24, 44 n.11; Defs. Mem. 14-15 & n.6; Defs. Opp. 10. Plaintiffs have not carried their initial burden (Part II.A.i). Even if they had, the longstanding tradition of prohibiting firearms in parks and analogous places demonstrates that the Parks Restriction is constitutional (Part II.A.ii).

### i. Plaintiffs have not established that the Second Amendment's text protects carrying guns in County parks

At *Bruen*'s first step, Plaintiffs must show that the Second Amendment's text protects their proposed conduct—carrying guns in County parks *specifically*, not just carrying guns in public *generally*. *See* Defs. Mem. 19-20; Defs. Opp. 19-20.[1] Plaintiffs do not appear to dispute that the burden at this textual step falls on them. Their response brief confirms that they have failed to meet that burden. To the extent that any textual argument at all can be gleaned from their brief,

---

[1] Similarly, in challenging the Events Restriction, Plaintiffs must show that the Second Amendment's text covers carrying guns at or adjacent to a "County-permitted event or an event that would otherwise require a County permit" (hereafter, "covered event" or "covered events") specifically, not just carrying in public generally. *See* Fairfax Cnty. Code § 6-2-1(A)(4).

Plaintiffs' position is that the Second Amendment's text prevents a government from prohibiting guns *everywhere* in public. *See* Pls. Opp. 28 ("[T]he Second Amendment forbids[] [b]anning guns in public places."). But the Ordinance applies only in what Judge Hilton described as "very narrow pieces of property," Prelim. Inj. Hr'g Tr. 27:19-22, Dkt. 38, and so Plaintiffs' burden is to establish that the Second Amendment's text protects carrying guns in those narrow areas. Plaintiffs sarcastically address Judge Hilton's "very narrow pieces of property" language without even acknowledging that those were the Judge's words or explaining how this Court could disregard Judge Hilton's description. *See* Pls. Opp. 12 n.5. And they certainly do not try to explain how the Second Amendment's text protects carrying in the narrow areas where the Ordinance applies—in parks and at or adjacent to certain events—specifically. Because the Ordinance does not prohibit guns everywhere in public, Plaintiffs' assertion that the Second Amendment's text protects carrying guns "in public places" is not enough to carry their burden. *See* Defs. Mem. 19-20; Defs. Opp. 19-20.

### ii. The Parks Restriction is consistent with a long historical tradition of restricting firearms in parks and analogous places

Even if Plaintiffs had satisfied their textual burden, history soundly defeats their claims. The undisputed evidence shows that when public parks emerged as communal spaces for repose and relaxation in the nineteenth century, scores of laws, ordinances, and rules prohibited guns in these new parks. *See* Defs. Mem. 21-25 (explaining that Defendants have located well over one hundred such prohibitions to date); Parks Table, Sleight Decl. Ex. 18, Dkt. 47-18. Even though *Bruen* requires only analogous laws, these laws are historical *twins* to the Parks Restriction, and because historical laws from the Reconstruction era are at least as relevant to this Court's inquiry as earlier laws, they establish by themselves that the Parks Restriction is constitutional. *See* Defs. Mem. 15-18; Defs. Opp. 16-19. Moreover, even if earlier history were required, the tradition of

restricting firearms in places analogous to parks stretches back centuries in our nation's history, taking various regulatory forms over time. *See* Defs. Mem. 26-31. Specifically, this tradition appeared in prohibitions on (a) guns in gathering places and public forums, *see id.* at 26-27; (b) going armed "to the terror" of the people, *see id.* at 28-29; (c) carrying firearms in privately-owned landscapes absent express permission from the owner, *see id.* at 29-30; and (d) guns in schools, *see id.* at 30-31. Each of these involves "comparable burdens" on armed self-defense and each is "comparably justified" when compared to the Parks Restriction. *See id.* at 26-31; *see also Bruen*, 597 U.S. at 29 (explaining that historical laws provide analogical support for modern laws if they involve comparable burdens and justifications). These regulatory traditions, independently and together with the subsequent parks-specific restrictions, establish that prohibitions on firearms in parks are consistent with our nation's historical tradition of firearm regulation. *See* Defs. Mem. 21-31; Defs. Opp. 23-25 (explaining that, unlike prohibition challenged in *Bruen*, there is no evidence from any historical period indicating that government was forbidden to prohibit guns in parks).

Plaintiffs' efforts to defeat this robust historical record are fruitless. They claim that (1) *Bruen* forbids relying on 19th-century laws, Pls. Opp. 12-15; (2) firearms prohibitions are permissible only where the government provides security, *id.* at 11-12; (3) *Bruen* rejects the founding-era history of prohibiting guns in crowded public forums, *id.* at 6-9; (4) even though founding-era laws prohibited going armed "to the terror of the people," *id.* at 8-9, the Second Amendment forbids a prohibition on going armed in circumstances where undisputed evidence shows that carrying firearms causes fear, *see id.* at 21-22; (5) prohibitions on carrying guns in schools and on carrying guns without the landowner's permission on private outdoor landscapes are insufficiently analogous to the Parks Restriction, *see id.* at 23-24; (6) parks have existed since

the founding, *see id.* at 15-19; (7) only legislation can reveal the public understanding of a right, *see id.* at 19-20; and (8) firearms were ubiquitous in the founding era, *see id.* at 9-11. All of these arguments contain multiple flaws.

### 1. Plaintiffs' effort to dismiss 19th-century and later laws is baseless

Plaintiffs claim that relying on 19th-century laws is "impermissible" under *Bruen*. *See* Pls. Opp. 12-15. They are wrong. As Defendants have already explained, *see* Defs. Opp. 17, the centerpiece of Plaintiffs' argument is a misleading omission. *Bruen* did not "flatly state[]," as Plaintiffs claim, that the scope of individual constitutional rights "is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." Pls. Opp. 12 (emphasis omitted). Instead, *Bruen* said, "*we have generally assumed*" that the scope of individual rights is pegged to the 1791 understanding, 597 U.S. at 37 (emphasis added)—making clear that it had not specifically focused on (let alone decided) the time-period issue in prior cases addressing other rights. *Bruen* obviously did not think that the "general[] assum[ption]" in its prior cases resolved the time-period question for the Second Amendment, because if it had, it would not have explicitly left that issue open. *See id.* at 37-38; *see also* Defs. Opp. 17 & n.10. Plaintiffs' persistent refusal to acknowledge that the centerpiece of their argument is something *Bruen* said prior cases had merely "assumed" suggests an awareness that their argument fails when *Bruen* is fairly read.

Defendants have already addressed the remainder of Plaintiffs' time-period arguments in their response brief and demonstrated that evidence from the Reconstruction era is at least as important as founding-era evidence. *See id.* at 16-19; *see also* Defs. Mem. 15-18; *Antonyuk v. Chiumento*, 89 F.4th 271, 318 n.27 (2d Cir. 2023) ("[E]vidence from Reconstruction … is at least as relevant as evidence from the Founding Era regarding the Second Amendment[.]"). Plaintiffs' "Exhibit A" to their brief contains the same and additional flaws. They are wrong to claim that

Reconstruction-era and later laws are irrelevant (resting, three more times, on the omission of "we have generally assumed" from their quotation of *Bruen*). *See* Pls. Opp. Ex. A. They are wrong to consider one of Defendants' scores of laws individually and then attack it for standing alone. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024) (explaining that under *Bruen*, courts "examine the historical evidence as a whole"). They are wrong to rely on *Bruen*'s statements that "late 19th-century evidence cannot provide much insight into the meaning of the Second Amendment *when it contradicts earlier evidence*," 597 U.S. at 66 (emphasis added), and that 20th-century evidence "does not provide insight … *when it contradicts earlier evidence*," *id.* at 66 n.28 (emphasis added), because there is no contradictory evidence with respect to parks—no evidence whatsoever that the Second Amendment was ever understood historically to forbid banning guns in parks.

## 2. Plaintiffs' government-security argument is wrong

Plaintiffs argue that the only places where the government is permitted to prohibit firearms are those with "Government-provided security." Pls. Opp. 11. Defendants have already refuted this argument: both historically and today, locations that are indisputably sensitive places where firearms may be prohibited frequently lack government-provided security. *See* Defs. Opp. 14-16 (explaining that schools, many government buildings, and polling places routinely lack security, and historically, even the U.S. Capitol and the White House lacked meaningful security); *see also, e.g.*, *Kipke v. Moore*, Nos. 1:23-cv-01293 & 1:23-cv-01295 (consol.), 2023 WL 6381503, at *6 (D. Md. Sept. 29, 2023) (rejecting government-security argument as "baseless" given that schools are sensitive places); Del. Const. of 1776, art. 28, *reprinted in Constitutions of the Several Independent States of America* 143-44 (1786) (mandating that "no persons shall come armed" to any election and that no "battalion or company, in the pay of the continent, or of this or any other State" shall come within one mile of any election-place), Sleight 3d Decl. Ex. 1.

### 3. *Antonyuk* correctly held that founding-era laws prohibited guns in crowded public forums

Plaintiffs continue their efforts to attack the Second Circuit's well-reasoned decision in *Antonyuk* by claiming that *Bruen* already rejected the founding-era history of prohibiting guns in crowded public forums on which *Antonyuk* relied. *See* Pls. Opp. 6-9. They are mistaken. As Defendants explained in their response brief, Plaintiffs' error lies in their failure to distinguish between the arguments presented and rejected in *Bruen* and the different arguments and conclusions in *Antonyuk*. *See* Defs. Opp. 25-26. Specifically, New York argued in *Bruen* that the Statute of Northampton and its early American equivalents prohibited going armed *everywhere*— and that is what *Bruen* rejected. *See* 597 U.S. at 40-41 (rejecting "Respondents['] argu[ment] that the prohibition on 'rid[ing]' or 'go[ing] ... armed' was a sweeping restriction on public carry of self-defense weapons" (quoting 2 Edw. 3 ch. 3)). *Antonyuk*, by contrast, relied on the statutes' prohibition on guns *in particular places*—fairs and markets—which *Bruen* did not address. *See* 89 F.4th at 357 n.47. The remainder of Plaintiffs' attacks on *Antonyuk* and on the founding-era tradition of prohibiting guns in crowded public forums repeat arguments from their moving brief to which Defendants have already responded. *See* Defs. Opp. 25-29.

### 4. Founding-era prohibitions on going armed to the terror of the people are analogous to the Parks Restriction

Plaintiffs admit that founding-era laws prohibited going armed "to the terror of the people." Pls. Opp. 8-9. They also admit that this founding-era tradition prohibited "*objectively* threatening behavior." *Id.* at 21 (emphasis added). Objective standards analyze a situation from the perspective of a reasonable person. *See, e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (asking whether "an objective reasonable person would perceive [plaintiff's] work environment to be hostile or abusive"); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 468 (4th Cir.

2013) ("We apply an objective test … asking whether a reasonable person in the official's position could have failed to appreciate that his conduct would violate the right[.]" (cleaned up)).

Defendants have presented robust and uncontradicted evidence that carrying firearms in Fairfax County parks causes fear in a significant majority of the local population. Specifically, "the potential presence of guns in parks … induces feelings of less safety among most people in the local population (they declare that if guns were allowed in such locales, they would feel 'less safe.'" Defs. Mem. 11 (Statement of Undisputed Material Facts ("SUMF") ¶ 47). People "fear that confrontations with others in a park … may escalate if guns are allowed there." *Id.* (SUMF ¶ 48). Not only do "very large proportions (and often almost all) of people who live in non-gun-owning households express insecurity and hesitancy when told that guns may be allowed in" parks, but also "a plurality (and often a majority) of people from gun-owning households share these views as well." *Id.* at 11-12 (SUMF ¶ 49). Experiments showed that local residents would be less likely to use parks if guns were allowed, a "chilling effect[]" that was "very large" with respect to "parks for children" in particular. *Id.* at 12 (SUMF ¶ 51).

When most people find particular conduct fear-inducing or threatening—as the uncontradicted evidence shows with respect to firearms in County parks—then it is objectively threatening. Plaintiffs suggest that any reference to community norms is a "heckler's veto," *see* Pls. Opp. 22, but they cannot have it both ways. They have whole-heartedly embraced as constitutional a standard, "to the terror of the people," that centers on popular reaction. They cannot now cry foul when uncontradicted evidence establishes that the presence of firearms in parks causes fear.[2]

---

[2] Plaintiffs' concession that the founding-era prohibition was objective, not subjective, recognizes that the prohibition focused on terrorizing *effect* rather than on an individual's subjective intent to cause fear. *See* Pls. Opp. 21; *see also Bruen*, 597 U.S. at 50 ("[Founding-era]

Plaintiffs also suggest that carrying firearms concealed, or by individuals with concealed-carry permits, cannot induce fear. *See id.* at 22 n.25. But the survey that yielded the County's uncontradicted evidence did not ask specifically about open carry or unlicensed carry; instead, it asked generally for respondents' views "if people are allowed to carry guns" or "are armed" or "if guns are allowed," without any distinctions made as to manner of carry. Filindra Report, Dkt. 49-1, Ex. 2, app. D (survey questionnaire). As former Fourth Circuit judge J. Michael Luttig explained in an amicus brief in *Bruen*, people may be terrified not only by open carry, but also "by knowing that there is likely a dramatically greater number of persons surrounding them who will be carrying concealed weapons just in case there is a violent outbreak, to which they will respond with gunfire." Br. of J. Michael Luttig et al. as Amici Curiae in Support of Respondents at 13, *Bruen*, No. 20-843, 2021 WL 4198019 (U.S. Sept. 13, 2021). Although that observation did not persuade the Supreme Court to uphold New York's challenged law, that is because New York "d[id] not offer any *evidence* showing that, in the early 18th century or after, the mere public carrying of a handgun would terrify people." *Bruen*, 597 U.S. at 45 (emphasis added). Here, by contrast, Defendants have presented uncontradicted evidence that carrying firearms in County parks would

---

statutes … prohibit[ed] bearing arms *in a way that spreads 'fear' or 'terror'* among the people." (emphasis added)); *id.* at 59 ("Under the common law, individuals could not carry deadly weapons *in a manner likely to terrorize others*." (emphasis added)). But even if subjective intent were required, Defendants' uncontradicted evidence would also provide the basis for satisfying that requirement, because it establishes that causing fear is the natural and probable consequence of carrying guns in County parks, and it is well settled that factfinders may infer that people intend the natural and probable consequences of their actions. *See, e.g.*, *Agnew v. United States*, 165 U.S. 36, 53 (1897) ("It is a well-settled rule … that the intent is presumed and inferred from the result of the action."); *United States v. Silva*, 745 F.2d 840, 850-51 (4th Cir. 1984) (approving jury instruction that "[i]t is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done"); *United States v. Nelson*, 277 F.3d 164, 196 (2d Cir. 2002) (approving instruction that jury "may infer that a person ordinarily intends all the natural and probable consequences of an act knowingly done").

spread fear. Thus, the founding-era tradition of prohibiting carrying firearms "to the terror of the people" establishes that the County's prohibition is constitutional.

**5. Founding-era prohibitions in schools and in private landscapes without owner permission are analogous to the Parks Restriction**

Plaintiffs do not contest that founding-era laws and traditions prohibited carrying guns in schools and carrying guns in private outdoor landscapes without the landowner's permission. *See* Pls. Opp. 23-24. Instead, they dismiss these traditions as irrelevant. *See id.* With respect to schools, they say that "[c]hildren are ubiquitous," and assert that focusing on the presence of children would mean that firearms could be prohibited in the entirety of Manhattan. *See id.* That is not correct. The County's argument is obviously not that the presence of any number of children makes a place sensitive. Rather, the County has put forward undisputed evidence of the *extensive* use of County parks by children and explained that, using the analogical methods *Bruen* requires, the Parks Restriction imposes a "comparable burden" and is "comparably justified" to prohibitions on guns in schools. *See* Defs. Mem. 4-5, 30-31. At the very least, Plaintiffs do not contest (and cannot reasonably contest) that prohibiting firearms in the County's playground parks, like Farrington Park and Clemyjontri Park, is permissible by analogy to prohibitions on guns in schools. *See* Defs. Mem. 24-25 & n.17; *cf.* Pls. Opp. 19 (acknowledging that some County parks are "small playgrounds"). Thus, the Parks Restriction uncontestably has, at the very least, a plainly legitimate sweep. *See* Defs. Opp. 32 n.38.

As for founding-era laws prohibiting firearms on privately-owned landscapes absent the landowner's permission, *see* Defs Mem. 29-30, Plaintiffs say this analogy is "silly" because it lacks state action, *see* Pls. Opp. 24. They are wrong: these are not simply instances where private landowners forbade guns on their property. These were state laws, creating a default prohibition

on carrying firearms in these large outdoor spaces, and the fact that the laws also allowed landowners to opt out of the default rule does not negate the state action.

### 6. Undisputed evidence establishes that parks like the County's did not exist in the founding era

Defendants set out robust evidence in their Statement of Undisputed Material Facts that parks like the County's did not exist in the founding era, with citations to the report of Professor Terence Young, an expert in the history of the American parks movement. *See* Defs. Mem. 9 (SUMF ¶¶ 36-38); *id.* at 21-22; *see also* Young Report, Dkt. 46-1, ¶¶ 8, 10-11, 13, 15, 19, 24. As already explained, Plaintiffs have not contested those facts in accordance with Local Rule 56(B) or the scheduling order. *See supra* Part II. Accordingly, this Court should treat Defendants' Statement of Undisputed Material Facts as admitted in its entirety, *see id.*, including the fact that parks in the modern sense did not exist at the founding.

Plaintiffs might assert that, notwithstanding their failure to comply with the local rule and order, they attempted to dispute that fact through a narrative discussion in the argument section of their brief, where they claimed that parks like the County's have existed since the founding era. *See* Pls. Opp. 15-18. Plaintiffs' argumentative discussion is not sufficient to overcome the strictures of Local Rule 56(B) and the Scheduling Order, for at least two reasons. *First*, Plaintiffs have not only failed to comply with the form the local rule and order require (though that failure is alone sufficient to deem Defendants' facts admitted, *see JDS Uniphase Corp.*, 473 F. Supp. 2d at 707). They have also failed to comply with the substance, in that both the rule and order required Plaintiffs to cite *to the record* to support any claim that a fact is disputed. *See* Local Civ. R. 56(B) ("citing the parts of the record relied on"); Scheduling Order ¶ 10(f) ("with appropriate citations to the record"); *Harvey v. Hobbs*, No. 1:20-cv-00605, 2023 WL 6445853, at *2 (E.D. Va. Sept. 29, 2023) ("Plaintiff's 'failure to cite to record evidence means that no dispute has been raised.'"

(citation omitted)). Plaintiffs have no record evidence to support their factual claim that parks have existed since the founding; they rely only on websites and articles. *See* Pls. Opp. 15-18. *Second*, and relatedly, "a party opposing summary judgment must offer evidence that could be presented in a form that would be admissible at trial." *Doe v. Meron*, 929 F.3d 153, 165 (4th Cir. 2019) (citing Fed. R. Civ. P. 56(c)(2)); *see also Interprofession du Gruyère*, 575 F. Supp. 3d at 632 (stating that nonmovant must identify "*admissible* record evidence to establish a genuine dispute of material fact" (emphasis added)). In the circumstances of this case, if Plaintiffs wished to present the substance of the website and articles they cite, they needed to locate a properly-qualified expert witness willing to testify to the reliability of those materials and put them in their proper context— as Defendants did with their own evidence. *See* Fed. R. Evid. 803(18) (hearsay exception for learned treatises); *see generally* Young Report, Dkt. 46-1. Plaintiffs have identified no experts and the deadline for doing so has long passed. *See* Defs. Mem. 12 (SUMF ¶ 53). Accordingly, the fact that parks in the modern sense did not exist at the founding should be treated as admitted.

Even if this Court disregarded Plaintiffs' failure to comply with Local Rule 56(B) and the scheduling order, and even if the articles and websites they cite could somehow be presented in a form that would be admissible at a trial, this Court should still conclude that Defendants are entitled to summary judgment. To begin with, Plaintiffs have not actually identified any evidence that genuinely contradicts Defendants' evidence. They claim that Defendants "provide[] no evidence that 'communal spaces for repose and relaxation' were only invented in the mid-19th century," Pls. Opp. 15, when that is *precisely* what Defendants' evidence, in the form of Professor Young's expert report, establishes with respect to parks. Moreover, Plaintiffs' own source for most of their claims—an article entitled "*Before* Parks"—actually supports Defendants. *See id.* at 16-17 (citing Ann Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston,*

*New York, and Philadelphia*, 40 Landscape J. 1 (2021)). The article states that "[p]ublic parks did not appear in the United States until the second half of the nineteenth century," and refers to earlier green spaces as "prepark landscapes." Beamish, 40 Landscape J. at 1, 13. Multiple courts have likewise concluded that modern-style parks did not appear until the second half of the 19th century, including the court that rejected Plaintiffs' request to enjoin the Parks Restriction under the Virginia Constitution. *See, e.g.*, *LaFave v. Cnty. of Fairfax*, No. CL2021-01569, 2023 Va. Cir. LEXIS 203, at *17 (Fairfax Cnty. Cir. Ct. June 23, 2023) ("Parks in the modern sense did not come into being until the mid-19th century[.]") (Sleight Decl. Ex. 14); *Antonyuk*, 89 F.4th at 359 (finding that "the rise of public parks as municipal institutions [occurred] over the latter half of the 19th century," "following the success of New York's Central Park" in the 1850s (citation omitted)); *id.* at 361 (finding that the "'modern idea of the park emerged in the nineteenth century'" (citation omitted)).

In any event, even if Plaintiffs had raised a genuine dispute regarding when parks similar to the County's first emerged, Defendants would still be entitled to summary judgment. The fact that no 18th-century law prohibiting firearms in Boston Common or the handful of other early green spaces Plaintiffs point to has (yet) been identified does not mean that anybody thought a prohibition would have been unconstitutional. "Legislatures past and present have not generally legislated to their constitutional limits." *Antonyuk*, 89 F.4th at 301. Moreover, "[t]here are many reasons why the historical record may not evince statutory prohibitions on a given practice," *id.*— including, in the case of Boston Common, the fact that it was used for militia training. There is thus no basis to infer unconstitutionality from silence. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255 (2022) (explaining that "the fact that many States in the late 18th and early

19th century did not criminalize" certain conduct "does not mean that anyone thought the States lacked the authority to do so").

### 7. Historical laws reveal public understanding when passed either by appointed or by elected officials

Plaintiffs suggest that the plethora of historical laws forbidding guns in city, state, and national parks are meaningless because they were not enacted by legislatures. *See* Pls. Opp. 18-20 (claiming that only "the common law and legislation voted on by the people" are relevant under *Bruen*). There are several problems with this argument. *First*, the Constitution constrains executive officials and legislatures alike. The National Park Service, a park superintendent, and a city park authority are no more entitled to establish regulations that violate the Constitution than are state legislatures. *See, e.g.*, *Robinson v. Florida*, 378 U.S. 153, 156 (1964) (explaining that "state action, of the kind that falls within the proscription of the Equal Protection Clause of the Fourteenth Amendment, may be brought about through the State's administrative and regulatory agencies just as through its legislature," and invalidating racially discriminatory state health board regulation); *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 512, 525 (D.C. Cir. 2010) (holding that National Park Service regulations regarding expressive activities violated First Amendment). Thus, the regulations created by those Constitution-bound actors reveal the limits of the Second Amendment right just as much as legislation does. *Second*, Plaintiffs' claim contradicts both *Heller* and *Bruen*. *Bruen* reiterated *Heller*'s statement that the "examination of *a variety of legal and other sources* to determine the public understanding of a legal text" is a "critical tool of constitutional interpretation." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (emphasis altered); *Bruen*, 597 U.S. at 20. As *Bruen* explained, *Heller* looked to, among other things, "founding-era legal scholars," "discussion of the Second Amendment in … public discourse after the Civil War," and "post-Civil war commentators." *Bruen*, 597 U.S. at 21 (cleaned up); *see also Heller*, 554 U.S.

at 614-16 (surveying, among other things, a Report of the Commission of the Freedmen's Bureau, a newspaper editorial, and comments of individual legislators). If "public discourse" and "commentators" can shed light on the public understanding of the Second Amendment right, it is impossible to understand how the actions of executive officials, bound by the Constitution and exercising power delegated to them by the people's representatives, could fail to do the same. *Third*, Plaintiffs' argument is wrong on its own terms: one of the earliest laws prohibiting guns in parks, the prohibition in Philadelphia's Fairmount Park, was enacted by the Pennsylvania legislature. *See* 1868 Pa. Laws 1088, No. 1020, § 21, pt. II, Young Ex. 5; *see also, e.g.*, 1905 Minn. Laws 620, ch. 344, § 53, Young Ex. 93; 1927 Ind. Acts 98, Young Ex. 86. *Fourth*, Plaintiffs' assertions (Pls. Opp. 20) that "no record of enforcement exists" for parks restrictions and "none were subjected to judicial scrutiny" are both irrelevant—because *Bruen* does not require a government to show enforcement or judicial review—and false. *See, e.g.*, *Annual Reports of the Department of the Interior for the Fiscal Year ended June 30, 1897*, at LXXXIV-LXXXV (1897), Young Ex. 82 (attributing increase in wildlife in Yosemite National Park to "the rigid enforcement of the rules against carrying firearms in the park"); *United States v. Lofton*, 233 F.3d 313 (4th Cir. 2000) (affirming conviction for possessing firearm in national park); *United States v. Brown*, 552 F.2d 817 (8th Cir. 1977) (same).[3]

---

[3] Plaintiffs' claims about Virginia's park regulation, *see* Pls. Opp. 20, are also irrelevant and false. That regulation did carry a criminal penalty. *See, e.g.*, *Virginia State Park Regulations* 10 (1967) (setting out 1966 provision of Code of Virginia stating that violation of rules adopted under the authority it delegated "shall constitute a misdemeanor"); *id.* at 7 (prohibiting everyone except park employees and officers from carrying or possessing firearms), Sleight 3d Decl. Ex 2. And Plaintiffs have not shown it was "illegal from … inception": they cite a 2002 Attorney General opinion concluding that the regulation was preempted because legislation listing locations where concealed carry permit-holders could not carry guns did not include parks, *see* Pls. Opp. 20 (citing Va. Att'y Gen. Op. 02-074 (Sept. 9, 2002)), but they have not shown when that legislation was passed. In any event, there is no question that the Virginia parks restriction was *in effect* from the 1930s until the early 2000s. *See, e.g.*, Va. Att'y Gen. Op. 01-080 (Dec. 6, 2001), Sleight 3d Decl.

### 8. Plaintiffs' claim that firearms were ubiquitous at the founding is irrelevant and unsupported

Plaintiffs assert that there were "guns everywhere" at the time of the founding. Pls. Opp. 9. They have made no effort to connect that factual contention to the issue in this case, which is whether a government may prohibit guns in parks—just as it may prohibit them, as Plaintiffs admit, in schools, government buildings, courthouses, legislative assemblies, and polling places, *see* Pls. Mem. 10-11. Nor have they made any serious effort to support their contention. They merely set out block quotes from a poorly-reasoned out-of-circuit district court decision, which described legislation some colonies enacted to require carrying firearms in some locations—mostly to church. *See* Pls. Opp. 9-11 (quoting *Koons v. Platkin*, 673 F. Supp. 3d 515, 628-29 (D.N.J. 2023), *appeal docketed*, No. 23-1900 (3d Cir. May 17, 2023)); *cf.* Defs. Opp. 30-31 (explaining that Third Circuit stayed *Koons* district court's injunction in relevant part, thereby indicating that government had made strong showing it is likely to prevail on appeal). As another district court has explained, founding-era laws requiring some men to carry guns to church "were not rooted in the Second Amendment's tradition," but rather were passed so that "militiamen or free white men" could "defend against potential attacks by Native Americans and Blacks during slave uprisings." *Goldstein v. Hochul*, No. 1:22-cv-08300, 2023 WL 4236164, at *14 (S.D.N.Y. June 28, 2023), *appeal docketed*, No. 23-995 (2d Cir. July 6, 2023). These laws prove nothing about the constitutionality of the Parks Restriction.

\*     \*     \*

---

Ex. 3 ("[I]n accordance with the prior opinions of the Attorney General on this subject and in light of the properly promulgated regulations of the Department of Conservation and Recreation, I am required to conclude that a person with a concealed weapons permit is prohibited from carrying a concealed weapon onto property falling within the purview of these regulations [*i.e.*, state parks].").

In sum, the Parks Restriction is constitutional, and Defendants are entitled to summary judgment.

### B. The Events Restriction is Constitutional under *Bruen*

Plaintiffs' Second Amendment challenge to the Events Restriction fails both on standing grounds and on the merits for the reasons set out in Defendants' prior briefs. *See* Defs. Mem. 32-34; Defs. Opp. 33-35. On standing, Plaintiffs have not shown, as they must to satisfy the injury-in-fact requirement of Article III, that they ever attended a covered event or adjacent area while armed, were dissuaded from doing so, or have plans to do so in the future. *See* Defs. Mem. 34 n.31; Defs. Opp. 35 n.40; *see also Antonyuk*, 89 F.4th at 376-79 (holding that plaintiffs lacked standing under similar circumstances). On the merits, Plaintiffs have not established that the Second Amendment's plain text covers the specific conduct that they wish to engage in and that they claim the Events Restriction prohibits. *See* Defs. Mem. 32; Defs. Opp. 33. Even if they had, the Events Restriction sits comfortably within this nation's historical tradition of firearm regulation. *See* Defs. Mem. 32-34; Defs. Opp. 33-35.

Nothing in Plaintiffs' opposition changes any of that. In fact, Plaintiffs do not mention the merits of their Second Amendment challenge to the Events Restriction, focusing instead on the Parks Restriction and, to a lesser extent, their due process challenge to the Events Restriction.[4] The only point that appears even arguably applicable is their contention that they need not prove a

---

[4] Plaintiffs also continue to misrepresent the scope of the Events Restriction. They erroneously assert that the Events Restriction covers "any event on County property, or any street or sidewalk that happens to be adjacent to such an event." Pls. Opp. 12 n.5. But the Events Restriction applies only with respect to *County-permitted* events, and it is undisputed that there are only six areas where and authorities from which County permits for events can be sought, all on County property—which does *not* include public roadways. *See* Defs. Mem. 4 (SUMF ¶¶ 11-12). In addition, the Ordinance and the County's official enforcement policy require appropriate signage as a condition of enforcement. *See id.* at 2-4 (SUMF ¶¶ 3-10).

"credible threat of prosecution" to establish standing. *See* Pls. Opp. 27-28.[5] That contention is puzzling. Indeed, it is contradicted by the very case Plaintiffs cite—they even quote the portion of *Kenny v. Wilson*, 885 F.3d 280 (4th Cir. 2018), that states there is injury-in-fact if "there exists a credible threat of prosecution." Pls. Opp. 27 (quoting *Kenny*, 885 F.3d at 288). And the rule *Kenny* states is well established. As Defendants explained, *see* Defs. Mem. 34-35; Defs. Opp. 35-36, controlling Supreme Court and Fourth Circuit authorities are clear that, to have standing to bring this pre-enforcement challenge, Plaintiffs must demonstrate "fears of [County] prosecution" that are "actual and well-founded enough to establish that the [Events Restriction] will be enforced against them." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 217 (4th Cir. 2020) (cleaned up); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) (holding that injury-in-fact for a pre-enforcement challenge requires a plaintiff to show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" (cleaned up)). They have failed to do so.

## IV.    The Ordinance Does Not Violate Due Process

Plaintiffs also assert that the portion of the Events Restriction that applies to "an event that would otherwise require a County permit" or an area "adjacent" to such an event is unconstitutionally vague. *See* Pls. Mem. 24-25; Compl. ¶¶ 52-59. Not so. As Defendants have explained, Plaintiffs' challenge fails both on standing grounds and on the merits. *See* Defs. Mem. 34-38; Defs. Opp. 35-39. None of the arguments in Plaintiffs' opposition changes that.

---

[5] To the extent that Plaintiffs intended their assertions about time period, security, prohibitions in crowded public forums, or prohibitions on carrying firearms "to the terror of the people" to apply to the Events Restriction as well as the Parks Restriction, those assertions are incorrect for the reasons set out above. *See supra* Parts III.A.ii.1-4.

## A. Plaintiffs Lack Standing to Bring Their Vagueness Claim

Plaintiffs lack standing to bring their due process claim because they have not established any credible threat of prosecution under the portions of the Events Restriction they challenge as vague. *See* Defs. Mem. 34-36; Defs. Opp. 35-38. Plaintiffs assert that they carry firearms in public areas without knowing whether these areas are being used by events that should have a permit (or are adjacent to such areas), but they have offered no evidence—such as instances or threats of enforcement—to support a credible threat of prosecution for that conduct. *See* Defs. Mem. 7-8 (SUMF ¶ 32). To the contrary, the Ordinance and County policy *preclude* enforcement in the manner Plaintiffs say they fear. *See id.* at 3-4 (SUMF ¶¶ 6-10). Plaintiffs thus lack standing to bring this pre-enforcement facial vagueness challenge. *See, e.g.*, *Md. Shall Issue*, 971 F.3d at 218.

Plaintiffs' opposition repeats the standing argument from their moving brief, to which Defendants have already responded. *See* Defs. Opp. 35-38; *compare* Pls. Mem. 25-26, *with* Pls. Opp. 25-26. Tellingly, Plaintiffs do not even try to address the Fourth Circuit's decision in *Maryland Shall Issue, Inc. v. Hogan*, a decision that compels the conclusion that Plaintiffs lack standing. *See* Defs. Mem. 35-36; *see also* Defs. Opp. 35-36. Defendants are entitled to summary judgment on Plaintiffs' due process claim for this reason alone.

## B. The Events Restriction Is Not Void for Vagueness

Even if Plaintiffs had standing, their due process claim fails on the merits. The undisputed facts establish that the Events Restriction is not unconstitutionally vague. *See* Defs. Mem. 36-38; Defs. Opp. 38-39. The Ordinance itself makes this clear, by mandating that "[n]otice of this ordinance *shall be posted*" at entrances to places it applies. *See* Defs. Mem. 2 (SUMF ¶ 5); *see also id.* (SUMF ¶¶ 3-4) (legislative history confirming that "[a]ppropriate signage must be posted in order to enforce the prohibition"). And the FCPD's Command Staff Memorandum ("CSM") reinforces that requirement by instructing police officers that the Ordinance applies and can be

enforced only where appropriate signage is posted. *See id.* at 3-4 (SUMF ¶¶ 8-10); *see also id.* at 3 (SUMF ¶¶ 6-7) (FCPD training video communicated "no sign, no enforcement" policy to officers). A person of ordinary intelligence thus knows precisely what is prohibited: carrying in locations where signs give notice of the Ordinance and state that firearms are forbidden there. *See id.* at 2-4 (SUMF ¶¶ 3-10); *see also* Sleight Decl. Ex. 33, Dkt. 47-41 (LaFave Dep. Tr. 90:5-91:9).[6]

Plaintiffs raise two arguments in response, but neither has merit. *First*, they contend that the CSM's statement that the Ordinance applies and will be enforced only at places where there is signage has no legal effect because (i) the Ordinance contains no such limiting language and (ii) County officials have no authority to amend the Ordinance "to their own liking or convenience." *See* Pls. Opp. 26-27. This is wrong on both counts. It is undisputed that the Ordinance expressly requires the posting of notice. *See* Defs. Mem. 2 (SUMF ¶ 5). Plaintiffs' suggestion that this requirement is somehow independent of the rest of the Ordinance makes no sense and is contrary to canons of statutory construction and clear legislative history. *See id.* (SUMF ¶¶ 3-4); *id.* at 37 & n.35; Defs. Opp. 38-39; *see also, e.g.*, *Elevate Group LLC v. Amyx, Inc.*, No. 1:21-cv-00048, 2022 WL 3924267, at *6 (E.D. Va. Aug. 30, 2022) (noting that, in interpreting a statute, courts "'consider the entire text, in view of its structure and of the physical and logical relation of its many parts'" (citation omitted)). Nor does the CSM "amend" the Ordinance; it simply confirms and applies the plain meaning of its language. *See* Defs. Mem. 2-5 (SUMF ¶¶ 3-10); *id.* at 36-38; Defs. Opp. 38-39.

---

[6] Contrary to Plaintiffs' contention, *see* Pls. Opp. 26, Defendants do not, and need not, rely on the "no set of circumstances" standard for facial challenges established in *United States v. Salerno*, 481 U.S. 739 (1987), to prevail on this claim. *See Kolbe v. Hogan*, 849 F.3d 114, 148-49 & n.19 (4th Cir. 2017) (en banc) (rejecting facial vagueness challenge to state firearms law based on limiting constructions in Attorney General opinion and Maryland State Police advisory while declining to apply *Salerno* standard).

*Second*, Plaintiffs assert that the CSM is "[u]nofficial and non-binding" and thus ineffective. *See* Pls. Opp. 27. That, too, is wrong. Plaintiffs rely on inapposite cases involving "informal statements," *Bryant v. Woodall*, 1 F.4th 280, 288-89 (4th Cir. 2021), or "nonbinding" votes, *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 383, 388 (4th Cir. 2001). By contrast, and as a matter of undisputed fact, the CSM sets out the County's "official enforcement policy" for the Ordinance. Defs. Mem. 3 (SUMF ¶ 8); *see also LaFave*, 2023 Va. Cir. LEXIS 203, at *4-5 (finding that the County has "adopted an official enforcement[] policy which prohibits enforcement of the [O]rdinance unless officers first ... confirm warning signage posted at any entrances or exits at qualifying locations, and … attempt to educate and seek voluntary compliance from violators"). The Fourth Circuit has relied on such official policies and guidance to find no credible threat of enforcement and that a law is not vague. *See Kolbe*, 849 F.3d at 148-49; *Md. Shall Issue*, 971 F.3d at 218. This Court should do the same.[7]

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion for summary judgment, grant Defendants' motion for summary judgment, and enter final judgment in Defendants' favor.

Respectfully submitted,

Date: May 24, 2024

THE COUNTY OF FAIRFAX, VIRGINIA, and the CHIEF OF POLICE, KEVIN DAVIS, in his official capacity

By: *s/ Anders T. Sleight*
*Counsel*

---

[7] Plaintiffs' suggestion (Pls. Opp. 27) that that they do not have adequate notice of the Ordinance "with respect to trails in County parks" fails for the additional reason that they did not challenge the Parks Restriction on vagueness grounds.

Douglas R. Kay, VSB No. 35468
Thomas W. Repczynski, VSB No. 39967
Anders T. Sleight, VSB No. 84458
OFFIT KURMAN, P.C.
8000 Towers Crescent Drive, Suite 1400
Tysons Corner, Virginia  22182
Telephone:  (703) 745-1800
Facsimile:  (703) 745-1835
dkay@offitkurman.com
trepczynski@offitkurman.com
Anders.sleight@offitkurman.com
*Co-Counsel for Defendants*

Daniel Robinson (VSB No. 78985)
John W. Burton (VSB No. 42223)
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035
Telephone: (703) 324-2421
Facsimile: (703) 324-2665
Daniel.Robinson@fairfaxcounty.gov
John.Burton@fairfaxcounty.gov
*Co-Counsel for Defendants*

Janet Carter (admitted *pro hac vice*)
William J. Taylor, Jr. (admitted *pro hac vice*)
EVERYTOWN LAW
450 Lexington Avenue, P.O Box 4184
New York, New York 10163
Telephone: (646) 324-8174
jcarter@everytown.org
wtaylor@everytown.org
*Co-Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record.


Stephen P. Halbrook
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
(703) 352-7276
protell@aol.com


Christopher M. Day
Earl N. "Trey" Mayfield, III
10521 Judicial Drive, Suite 200
Fairfax, VA 22030
(703) 268-5600
cmday@jurisday.com
tmayfield@jurisday.com

*/s/* Anders T. Sleight
Anders T. Sleight
