IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KIMBERLY LAFAVE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No: 1:23-cv-1605-WBP |
| ) | |
| THE COUNTY OF FAIRFAX, VIRGINIA, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' SUPPLEMENTAL AUTHORITY BRIEF**

Pursuant to the Court's July 7, 2024 Order, Plaintiffs Kimberly LaFave, Glenn M. Taubman, and Robert Holzhauer provide this notice of supplemental authority concerning the U.S. Supreme Court's recent determinations in *United States v. Rahimi*, 144 S. Ct. 1889 (2024) and *Antonyok v. James*, 2024 WL 3259671 (July 2, 2024).

*Rahimi* addressed the question of whether the Second Amendment permits individuals subject to a domestic violence restraining order to possess a firearm if that order includes a finding that he "represents a credible threat to the physical safety of [an] intimate partner." 144 S. Ct. at 1894. Consistent with its earlier holdings in *Heller* and *Bruen*, the Court held that the Government may curtail an individual's right to bear arms based on the individual's unlawful conduct. *Id.* at 1897, 1899-1901. "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

The parties in the instant matter have extensively discussed Founding-era restrictions upon "going armed" in public, and as Plaintiffs demonstrated, those restrictions were not general bans on the public bearing of arms, but instead were prohibitions on *behavior* designed to

1

terrorize others known as "affrays." *Rahimi* reaffirmed that affrays encompassed "the offense of 'arm[ing]' oneself 'to the Terror of the People….'" *Id.* For instance, North Carolina "expressly codified prohibitions on going armed." *Id.* (citing Collection of All of the Public Acts of Assembly, of the Province of North-Carolina: Now in Force and Use 131 (1751) (1741 statute)) ("Collection").

That 1741 statute provided that constables "shall arrest all such Persons as in your Sight, shall ride or go armed offensively, or shall commit or make any Riot, Affray, or other Breach of his Majesty's Peace…." Collection, Ex. 1, at 131 hereto. As Plaintiffs noted in their earlier briefing, the 1741 statute still appeared in North Carolina's laws of 1791. *See* Pl. Memo. Support of S.J., Dock. # 53, at 15-16. While it was an offense for a free person to go armed only if done so "offensively," the 1741 statute also provided that "no Slave shall go armed with Gun, Sword, Club or other Weapon" at all. Collection at 170. Nothing in North Carolina law then or later prohibited a free person from peaceably going armed in public places like fairs or markets.

"[T]he Second Amendment permits the disarmament of *individuals who pose a credible threat to the physical safety of others*." *Rahimi*, 144 S. Ct. at 1898 (emphasis added). As the *Rahimi* Court observed, the domestic violence restraining order at issue was designed to "mitigate demonstrated threats of physical violence." *Id.* at 1901. "Unlike the regulation struck down in *Bruen,*" the Court held, such restraining orders "[do] not broadly restrict arms use by the public generally." *Id.* Prohibitions on firearm possession by individuals like felons and the mentally ill are entirely lawful exceptions to the general constitutional right to keep and bear arms. *Id.* at 1902. *Rahimi*'s holding is a straightforward and common sense one consistent with other abridgements of constitutional rights: "An individual found by a court to pose a credible

threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 1903.

Nothing in *Rahimi* suggests that general bans upon law-abiding citizens are permissible. Indeed, as set forth above, the opposite is true. Individuals have the right to bear arms in public unless there has been an individualized adjudication depriving them of that right. Consistent with that holding, the Court granted certiorari in *Antonyok v. James*, the Second Circuit case upon which the County heavily relies in support of its firearms ban, and vacated and remanded the Second Circuit's judgment for reconsideration in light of the *Rahimi* decision. 2024 WL 3259671 (July 2, 2024).

The Supreme Court's decision "vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect . . . ." *Los Angeles County v. Davis*, 440 U.S. 625, 634 n.6 (1979) (cleaned up). The legal effect of vacating the Second Circuit's judgment is to leave intact the underlying district court judgment holding the New York ban on firearms in parks unconstitutional, unless and until the Second Circuit renders a new judgment after reconsideration. *See Antonyuk v. Hochul*, 639 F.Supp.3d 232, 322-23 (N.D.N.Y. 2022) (finding that plaintiffs are likely to prevail on their claim that public parks are not "sensitive places").

                                                    Respectfully Submitted,

                                                    Kimberly LaFave
                                                    Glenn M. Taubman
                                                    Robert Holzhauer,

                                                    Plaintiffs

By Counsel

_____/s/_____
Stephen P. Halbrook
protell@aol.com
Va. Bar No. 18075
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
(703) 352-7276

_____/s/_____
Earl N. "Trey" Mayfield, III
tmayfield@jurisday.com
Va. Bar No. 41691
10521 Judicial Drive, Suite 200
Fairfax, VA 22030
(703) 268-5600

## CERTIFICATE OF SERVICE

      I certify that the foregoing document was served on all counsel of record via ECF on July 17, 2024.

                                                              _____/s/_____
                                                               Trey Mayfield